IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DAVID FRITZE, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF DEAN FRITZE, DECEASED, AND AS REPRESENTATIVE OF THE ESTATE OF MINERVA FRITZE, DECEASED | § § § § § § | MDL NO. 2543 1:14-MD-2543-JMF HON. JESSE M. FURMAN |
| *Plaintiff,* | § § § | C.A. NO. _____ COMPLAINT |
| v. | § § | JURY TRIAL DEMANDED |
| GENERAL MOTORS, LLC, | § | |
| *Defendant.* | | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

COME NOW Plaintiff, David Fritze, Individually and as Representative of the Estate of Dean Fritze, Deceased and as Representative of the Estate of Minerva Fritze, Deceased (hereinafter the "Named Plaintiff" or "Plaintiff"), through the undersigned counsel, who respectfully show as follows:

**PRELIMINARY STATEMENT**

1. The Named Plaintiff's cause of action is brought solely against GENERAL MOTORS, LLC ("New GM"). The Named Plaintiff does not assert any causes of action against General Motors Corporation ("Old GM").

2. Any references to General Motors Corporation, Old GM, or pre-sale order conduct in this Complaint are for background and reference purposes, and to establish the genus of Old-to-New employees' knowledge of the safety defects described herein as well as said employees' wrongful, negligent actions and inactions with respect to the same. Under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement ("Purchase Agreement"), New GM

1

acquired certain Old GM assets and product liabilities, including product liability for crashes involving Old GM vehicles causing personal injury, loss of life, or property damage. New GM also acquired knowledge of Old GM's activities and the defective airbag systems identified herein, via the mind of the employees, officers, managers, as well as via books, and records obtained and/or acquired as a result of the Purchase Agreement and subsequent Sale Order, as further defined by the Orders, Judgments, and/or Decisions of the United States Bankruptcy Court for the Southern District of New York in *Motors Liquidation Company, et al.*, *f/k/a General Motors Corp., et al.*, Case No. 09-50026 (REG). Thus, the duties of Old GM are part of the foundation for the product liability assumed by New GM. Further, as identified therein, the Plaintiff has claims for crashes involving an Old GM vehicle ("GM vehicles") that caused personal injury, loss of life, or property damage and New GM is, therefore, liable to the Named Plaintiff.

**PARTIES**

3.      Plaintiff David Fritze, Individually and as Representative of the Estate of Dean Fritze, Deceased, and as Representative of the Estate of Minerva Fritze, is, and was at all times relevant hereto, a resident of Belcourt, North Dakota.

4.      Plaintiff asserts claims against Defendant General Motors LLC ("New GM") for personal injuries stemming from an incident which occurred on January 4, 2009, involving Plaintiff's 2003 Chevrolet Cobalt (VIN 1G1AS58H397104338).

5.      The Named Plaintiff's personal injury claim involves a Defective Vehicle, specifically a 2003 Chevrolet Cobalt. Defendant New GM is a Delaware limited liability company. On July 10, 2009, New GM acquired substantially all of the assets and assumed product liabilities of Old GM by way of a Section 363 sale under Chapter 11 of the Bankruptcy Code. New GM assumed product liabilities of Old GM, which filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 1, 2009. Pursuant to the Agreement and other orders

2

of the Bankruptcy Court, Defendant New GM purchased the assets of Old GM and hired many, if not most, of Old GM's employees including, on information and belief, most of the same senior-level management, officers, and directors. New GM also acquired Old GM's designs, tools, inventory, books, records, and its key contracts, among other essential assets.

6.      Under the Purchase Agreement, New GM assumed liability for crashes after the closing date of the Purchase Agreement involving Old GM vehicles causing personal injury, loss of life, or property damages.

7.      New GM also assumed product liabilities of Old GM, including certain statutory requirements:

> From and after the Closing, Purchaser [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by Seller [Old GM].

8.      In addition, New GM set forth that:

> From and after the Closing, Purchaser [New GM] shall be responsible for the administration, management and payment of all Liabilities arising under (i) express written warranties of Sellers [Old GM] that are specifically identified as warranties and delivered in connection with the sale of new, certified used or pre-owned vehicles or new or remanufactured motor vehicle parts and equipment (including service parts, accessories, engines and transmissions) manufactured or sold by Sellers or Purchaser prior to or after the Closing and (ii) Lemon Laws.

9.      At all times relevant to the claims in this lawsuit, Old GM and New GM were in the business of developing, manufacturing, and marketing cars throughout the United States generally, and specifically in the Plaintiff's state of citizenship. New GM has a network of authorized retailers that sell its vehicles and parts throughout the United States. New GM maintains its principal place of business at 300 Renaissance Center, Detroit, Michigan.

**JURISDICTION**

10.     This Court has diversity jurisdiction over this case under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000.00 and the Plaintiff and New GM are citizens of different states.

**FACTUAL BACKGROUND**

**General Background**

11.     Plaintiff Dean Fritze was the driver of a 2003 Chevrolet Cobalt (1G1AS58H397104338) on January 4, 2009, on Aklin Road in Farmington, Minnesota, when another driver lost control of his vehicle, struck the Plaintiffs, causing them to lose control and crash, resulting in severe and catastrophic injuries, and ultimately the death of Dean Fritze and his passenger, Minerva Fritze.  The frontal airbags did not deploy during this accident.  The accident resulted in frontal damage to the vehicle and the frontal airbags failed to deploy.  Clearly, there was a defect in the airbags since the frontal airbags failed to deploy.  Notice of Recalls 14V047000 and 14V171000 were issued after the deaths of the Plaintiffs.

12.     An automaker should never place profits above safety and should never conceal from consumers or the public any defects that exist in its vehicles.  New GM's Vehicle Safety Chief, Jeff Boyer, recently proclaimed that "Nothing is more important than the safety of our customers in the vehicles they drive."  *GM Announces New Vehicle Safety Chief*, *available at* http://democrats.energycommerce.house.gov/sites/default/files/documents/Testimony-Barra-GM-Ignition-Switch-Recall-2014-4-1.pdf.

13.     Indeed, the first priority of a car manufacturer should be to ensure that its vehicles are safe and, in particular, have working airbag systems, passenger restraint systems, and other safety features that can prevent or minimize the threat of death or serious bodily harm in a collision.

In addition, a car manufacturer must take all reasonable steps to ensure that once a vehicle is running, it operates safely, and its critical safety systems (such as its airbag systems and passenger restraint systems) work properly until such time as the driver shuts down the vehicle. Moreover, a manufacturer that is aware of a dangerous design defect that causes its airbags or passenger airbag systems not to function properly must promptly disclose and remedy such defects.

14.    To date, Old GM and New GM have designed, manufactured, marketed and/or sold millions of automobiles installed with defective airbag systems and passenger restraint systems in General Motors brand vehicles.

15.    In addition, or in the alternative, Old GM and New GM have sold millions of vehicles suffering from the other, similar, potentially life-threatening major defects. As will be shown at trial, all the knowledge of Old GM with respect to these defects was inherited by or is imputable to New GM within the meaning of the Orders, Judgments, and/or Decisions of the United States Bankruptcy Court for the Southern District of New York in *Motors Liquidation Company, et al., f/k/a General Motors Corp., et al.*, Case No. 09-50026 (REG).

16.    On July 9, 2009, the United States Bankruptcy Court approved the sale of substantially all of Old GM's assets to New GM which retained the vast majority of Old GM's senior and management level executives and engineers who knew that Old GM had manufactured and sold millions of vehicles afflicted with an airbag system and/or passenger restraint system defect. Those employees' knowledge regarding said defect is imputed to New GM, whenever obtained.

17.    On or around the day of its formation as an entity, New GM also acquired, *inter alia*, the knowledge of the contents of Old GM's "files" and company "documents". To that end, New GM acquired notice of the safety-related defects contained in Old GM's files, including

numerous engineering reports, investigative reports, failure analyses, technical service bulletins, and other documentation concerning the common defects in the airbag systems/passenger restraint systems described herein.

18.    Defendant New GM also had ongoing obligations under the Safety Act to monitor both Old GM and New GM vehicles on the road, to make quarterly reports to NHTSA, and to maintain all relevant records for five years.  Defendant New GM explicitly accepted Safety Act responsibilities for Old GM vehicles in §6.15 of the Sale Agreement through which it acquired substantially all of Old GM's assets.

19.    The Safety Act and related regulations require the quarterly submission to NHTSA of "early warning reporting" data, including incidents involving death or injury, claims relating to property damage received by the manufacturer, warranty claims paid by the manufacturer, consumer complaints, and field reports prepared by the manufacturer's employees or representatives concerning failure, malfunction, lack of durability, or other performance issues. 49 U.S.C. §30166(m)(3); 49 C.F.R. §579.21.  Manufacturers must retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  49 C.F.R. §576.5 to §576.6.

20.    The Safety Act further requires immediate action when a manufacturer determines or should determine that a safety defect exists.  *United States v. General Motors Corp.,* 574 F. Supp. 1047, 1050 (D.D.C. 1983).  A safety defect is defined by regulation to include any defect that creates an "unreasonable risk of accidents occurring because of the design, construction, or performance of a motor vehicle" or "unreasonable risk of death or injury in an accident." 49 U.S.C. §30102(a)(8).  Within five days of learning about a safety defect, a manufacturer must notify

NHTSA and provide a description of the vehicles potentially containing the defect, including "make, line, model year, [and] the inclusive dates (month and year) of manufacture," a description of how these vehicles differ from similar vehicles not included in the recall, and "a summary of all warranty claims, field or service reports, and other information" that formed the basis of the determination that the defect was safety related. 49 U.S.C. §30118(c); 49 C.F.R. §573.6(b)-(c). Then, "within a reasonable time" after deciding that a safety issue exists, the manufacturer must notify the owners of the defective vehicles. 49 C.F.R. §577.5(a), §577.7(a). Violating these notification requirements can result in a maximum civil penalty of $15,000,000. 49 U.S.C. §30165(a)(1).

21.     Defendant New GM used several processes to identify safety issues, including the Transportation Recall Enhancement, Accountability and Documentation ("TREAD") database and Problem Resolution Tracking System ("PRTS"). The TREAD database, used to store the data required for the NHTSA early warning reports, was the principal database used by Old and New GM to track incidents related to Old and New GM vehicles. The database included information from (i) customer service requests; (ii) repair orders from dealers; (iii) internal and external surveys; (iv) field reports from employees who bought Old and New GM vehicles and from Captured Test Fleet reports; (v) complaints from the OnStar call center; and (vi) a database maintained by the Old and New GM legal staff to track data concerning complaints filed in court. A TREAD reporting team would conduct monthly database searches and prepare scatter graphs to identify spikes in the number of accidents or complaints related to various Old and New GM vehicles. The PRTS is a database that tracks engineering problems identified in testing, manufacturing, through warranty data and through customer feedback. The PRTS process

involves five steps: identification of the issue, identification of the root cause, identification of a solution, implementation of the solution, and feedback.

22.    Because the same employees carried out the TREAD Act obligations at Old GM and Defendant New GM, they not only retained the knowledge they acquired at Old GM – they were in fact required to do so. This further supports the propriety of imputing the knowledge of Old GM employees to New GM, even where that knowledge stems in part from their performance of the same or similar roles at Old GM.

23.    In setting forth the knowledge and conduct of Old GM in connection with the defects set forth herein, Plaintiff alleges that New GM is liable for the actions of Old GM only with respect to the Products Liability claims for compensatory damages, which are an Assumed Liability. With respect to Plaintiff's independent claims, Plaintiff does not seek to hold Defendant New GM liable for the actions of Old GM. Instead, the knowledge and conduct of Old GM is generally important and relevant because it is imputed to Defendant New GM under governing principles of agency law.

24.    Numerous Old GM employees carried knowledge of airbag system and passenger restraint system defects with them into their continued employment at New GM after the July 10, 2009 Bankruptcy Sale.

25.    New GM received customer complaints of airbags failing to deploy in a frontal collision in the make and model of Plaintiff's vehicle, including the following:

- GOT HIT ON DRIVERSIDE FRONT END NO AIRBAGS CAME OUT (12/07/2017)

- THE CONTACT OWNS A 2009 CHEVROLET COBALT. WHILE IDLING AT A RED LIGHT, ANOTHER VEHICLE TRAVELING APPROXIMATELY 50 MPH REAR ENDED THE CONTACT'S VEHICLE. AS A RESULT, THE CONTACT STRUCK THE PRECEDING VEHICLE. THE TRUNK OF THE CONTACT'S VEHICLE WAS PUSHED INTO THE BACK SEAT APPROXIMATELY FOUR INCHES FROM THE

FRONT SEAT. THE FRONT OF THE VEHICLE WAS BUCKLED INTO THE WINDSHIELD. NONE OF THE FRONTAL AIR BAGS DEPLOYED. A POLICE REPORT WAS FILED. THE PASSENGER WAS TAKEN TO THE HOSPITAL BY AMBULANCE AND WAS UNCONSCIOUS. (07/06/2017)

- THE CONTACT OWNS A 2009 CHEVROLET COBALT. WHILE DRIVING APPROXIMATELY 35 MPH, A SECOND VEHICLE CRASHED INTO THE PASSENGER SIDE OF THE CONTACT'S VEHICLE. THE FRONT AND SIDE CURTAIN AIR BAGS DID NOT DEPLOY. (07/03/2015)

- I WAS DRIVING TO WORK. WENT OVER AN ICY BRIDGE. LOST CONTROL, SPUN, AND WENT DOWN HILL AND INTO THE TREES. AIRBAGS NEVER DEPLOYED ON IMPACT. THE CAR IS COMPLETELY TOTALED. (02/15/2016)

- THE CONTACT OWNS A 2009 CHEVROLET COBALT. WHILE DRIVING AT APPROXIMATELY 35 MPH, THE STEERING WHEEL SEIZED WITHOUT WARNING AND THE VEHICLE STALLED. CONSEQUENTLY, THE CONSUMER CRASHED INTO A TREE AND THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS FILED AND THERE WERE NO INJURIES REPORTED. THE VEHICLE WAS TOWED TO AN INDEPENDENT MECHANIC. THE CONTACT WAS NOT AWARE OF THE DIAGNOSIS. THE VEHICLE WAS REPAIRED. THE VEHICLE WAS LATER REPAIRED UNDER NHTSA CAMPAIGN NUMBER: 10V073000 (STEERING), BUT THE FAILURE RECURRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 20,000 (08/01/2012)

- THE CONTACT OWNS A 2009 CHEVROLET COBALT. THE CONTACT STATED THAT ANOTHER VEHICLE CRASHED INTO THE REAR OF THE VEHICLE AT AN UNKNOWN RATE OF SPEED CAUSING EXTENSIVE DAMAGE TO THE VEHICLE AND THE AIR BAGS DID NOT DEPLOY. THE DRIVER AND THE PASSENGAR SUSTAINED INJURIES TO THE HEAD, THE NECK AND THE BACK WHICH BOTH REQUIRED MEDICAL ATTENTION. THE CONTACT METIONED THAT DUE TO THE IMPACT OF THE CRASH, THE DRIVER AND PASSENGARS HEAD CAME IN CONTACT WITH THE WINDSHIELD. THE CONTACT DID NOT DISCLOSE IF A POLICE REPORT WAS FILED OR NOT. THE VEHICLE WAS TOWED TO A DEALER BUT WAS NOT DIAGNOSED OR REPAIRED. THE VEHICLE WAS NOT INCLUDED IN NHTSA CAMPAIGN ID NUMBER: 14V047000 (AIR BAGS , ELECTRICAL SYSTEM). THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 115,000. (03/05/2015)

- THE CONTACT OWNS A 2009 CHEVROLET COBALT. WHILE DRIVING AT APPROXIMATELY 30 MPH, THERE WAS BLACK ICE ON THE ROAD, WHICH CAUSED THE VEHICLE TO SPIN AND CRASH INTO A TREE. THE AIR BAGS DID NOT DEPLOY. IN ADDITION, THE VEHICLE STALLED WITHOUT WARNING. THE VEHICLE WAS ABLE TO RESTART. THE CONTACT DID NOT DISCLOSE WHETHER A POLICE REPORT WAS FILED AND THERE WERE NO INJURIES. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 90,000. THE VIN WAS UNAVAILABLE. (01/28/2015)

- THE CONTACT OWNS A 2009 CHEVROLET COBALT. WHILE TRAVELING APPROXIMATELY 20 MPH, ANOTHER VEHICLE CRASHED INTO THE FRONT OF THE VEHICLE. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED AND NO INJURIES WERE REPORTED. THE VEHICLE WAS TAKEN TO THE DEALER. THE TECHNICIAN DIAGNOSED THAT THE AIR BAG SYSTEM WAS FAULTY AND THE VEHICLE WAS REPAIRED. IN ADDITION, WHILE ENTERING THE HIGHWAY AND ATTEMPTING TO MAKE A RIGHT TURN, THE VEHICLE VEERED TO THE LEFT AND INTO ONCOMING TRAFFIC. AS A RESULT, A SECOND VEHICLE CRASHED INTO THE FRONT DRIVER SIDE OF THE VEHICLE. NO INJURIES WERE REPORTED AND NO POLICE REPORT WAS FILED. AFTER RESTARTING THE ENGINE, THE VEHICLE OPERATED AS NORMAL. ALSO, THE CONTACT INDICATED THAT FUEL WAS LEAKING FROM THE REAR OF THE VEHICLE. THE VEHICLE WAS TAKEN TO THE DEALER WHO DIAGNOSED AND REPAIRED THE FAILURE. NO INFORMATION WAS AVAILABLE REGARDING THE DIAGNOSIS. THE VIN WAS NOT AVAILABLE. THE FAILURE MILEAGE WAS 40,000. (09/01/2011)

- DEER HIT CAR WAS VERY DARK 7 AM WITNESS CALLED 911 JACKSON TWP POLICE CAME CAR HAD TO BE TOWED.  FRONT END OF CAR ALL SMASHED AIR BAG DID NOT GO OFF I WAS HYSTERICAL GOD SENT ME AN ANGEL THAT MORNING WITNESS STAYED WITH ME UNTIL POLICE CAME POLICE CALLED FOR TOW TRUCK & MADE REPORT TOTAL COST OF REPAIRS.  OVER $6,000 THOUGHT CAR WOULD BE TOTALED I HAVE COPY OF ALL REPAIRS DONE. (11/03/2012)

- THE CONTACT OWNS A 2009 CHEVROLET COBALT. THE CONTACT STATED THAT THE DRIVER WAS TRAVELING APPROXIMATELY 25 MPH AND DROVE OVER A PATCH OF ICE. THE DRIVER LOST CONTROL OF THE VEHICLE AND CRASHED INTO A GUARD RAIL AND AN EMBANKMENT. THE DRIVER' S SIDE DOOR THEN OPENED INDEPENDENTLY AND CAUSED THE DRIVER TO BE THROWN FROM THE VEHICLE WHILE SECURED IN THE SEAT BELT. THE AIR BAGS FAILED TO DEPLOY. THE DRIVER WAS AIR LIFTED TO THE HOSPITAL AND TREATED FOR A BRAIN INJURY. A POLICE REPORT WAS FILED OF THE INCIDENT. THE VEHICLE WAS DESTROYED. THE CONTACT REFERENCED NHTSA CAMPAIGN ID NUMBER 14V047000 (AIR BAGS, ELECTRICAL SYSTEM) BUT DID NOT CONFIRM IF THE VEHICLE WAS INCLUDED IN THE RECALL CAMPAIGN. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 105,000. (12/24/2013)

- DECEMBER 29, 2011, I WAS DRIVING HOME ONE EVENING IN THE COBALT WHEN MY CAR'S ENGINE SHUT OFF AND I LOST CONTROL ON A SEMI-RESIDENTIAL A FEW BLOCKS FROM HOME. DRIVING AT ABOUT 35-45 MP, DOWNHILL, I HIT A PARKED CAR ON THE LEFT SIDE OF THE ROAD (NARROW ROAD, CARS PARKED ON BOTH SIDES, 2-WAY STREET). I THOUGHT, "I'M GOING TO DIE". THIS IMPACT MADE THE CAR CONTINUE ON, FASTER AND MORE OUT OF CONTROL, HITTING ANOTHER PARKED VEHICLE ON THE OPPOSITE SIDE OF THE STREET AND I FINALLY WAS ABLE TO STOP THE CAR BY HITTING THE PASSENGER SIDE FRONT WHEEL/BUMPER OF THE COBALT AGAINST THE A PARKED TRUCK TO AVOID DRIVING INTO AN INTERSECTION OR ANY ONCOMING TRAFFIC. NO AIRBAGS EVER

DEPLOYED. THE CAR THEN FLIPPED OVER, AND THAT'S HOW THEY FOUND AND RECOVERED ME. I AWOKE HOURS LATER IN SHOCK TRAUMA AT WASHINGTON HOSPITAL CENTER IN DC (WHERE I WORKED AT THE TIME), WITH THE CAR TOTALED AND JUST A SCRATCH ON MY HAND. I JUST HAD ACHES/PAINS, NO BROKEN BONES, BUT HAD TO TAKE SOME TIME OFF WORK. I HAD NO HEALTH INSURANCE AS I WAS A CONTRACTED EMPLOYEE. CAR INSURANCE PAID OFF THE EXPENSE OF VEHICLE. THANK GOD NOBODY WAS KILLED NOR SERIOUSLY INJURED. I HAVE ALL PAPERWORK, PHOTOS BUT I STILL DON'T DRIVE, MAYBE JUST ONCE A WEEK. THE YEAR OF THE COBALT IS FROM 2009, BUT I BELIEVE THIS VEHICLE SHOULD BE INCLUDED IN THE CLASS ACTION SUIT, AS IT WAS COMPLETELY UNSAFE TO DRIVE. (12/29/2011)

- AS I WAS PULLING INTO THE GARAGE I ALWAYS LOOK TO SEE EXACTLY WHERE I SHOULD STOP. AS I STEPPED ON THE GAS PEDAL TO PULL UP A LITTLE BIT MORE THE CAR ACCELERATED AND WOULD NOT STOP WHEN I STEPPED ON THE BRAKE AND WENT INTO MY SON'S TOOL BOX AND IF IT WASN'T THERE WOULD OF GONE THROUGH THE DINING ROOM WALL OUT THE OTHER SIDE. AS IT WAS THE TOOL BOX WENT INTO THE WALL. THE AIR BAGS DID NOT DEPLOY AND THE WINDSHIELD WIPERS KEPT ON GO AS FULL SPEED, THE TIRES WERE SPINNING AND THERE WERE SKID MARKS ON THE FLOOR. THE BRAKES WENT DOWN TO THE FLOOR. THE GARAGE WAS FULL OF SMOKE FROM THE TIRES THAT IS HOW FAST THE CAR WAS GOING. I HAD TROUBLE SHUTTING OFF THE CAR. (02/25/2014)

- VEHICLE'S AUTOMATIC DOOR LOCKS BEGAN TO ENGAGE AND DISENGAGE ON THEIR OWN, POSSIBLY LOCKING THE STEERING COLUMN AS VEHICLE ENTERED INTO A CURVE. CAUSED DRIVER TO LOOSE CONTROL GO INTO DITCH, BOUNCE OUT OF DITCH AND LOG ROLL THE VEHICLE. AIR BAGS DID NOT DEPLOY. DOOR LOCKS WERE STILL GOING UP AND DOWN SEVERAL HOURS LATER AT THE VEHICLE IMPOUND YARD AND WAS OBSERVED BY THE POLICE OFFICER AND NOTED IN HIS REPORT. (07/05/2012)

- THE CONTACT OWNS A 2009 CHEVROLET COBALT. THE CONTACT STATED WHILE DRIVING APPROXIMATELY 40 MPH, THE BRAKE PEDAL WAS ENGAGED AND THE VEHICLE CONTINUED TO ACCELERATE. THE CONTACT CRASHED INTO ANOTHER VEHICLE. THE CONTACT SUFFERED AN INJURY TO HIS NECK. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED. THE VEHICLE SUSTAINED DAMAGE TO THE FRONT DRIVER'S SIDE BUMPER AND WAS TOWED TO AN INDEPENDENT MECHANIC. THE MANUFACTURER WAS NOT NOTIFIED OF THE PROBLEM. THE APPROXIMATE FAILURE MILEAGE WAS 85,000 (05/13/2013)

- I WAS DRIVING MY 2009 CHEVY COBALT WITHIN THE POSTED SPEED LIMIT WHEN THE POWER STEERING FAILED RESULTING IN A FAIRLY HORRIFIC CRASH, WITH THE CAR COMING TO REST ON THE DRIVERS SIDE AGAINST SOME TREES. I SUFFERED A HEAD INJURY AND THANK GOD MY SON WAS NOT HURT ALTHOUGH WE HAVE BOTH BEEN SUFFERING FROM HEADACHES SINCE THE ACCIDENT. WERE IT NOT FOR THE SMALL TREES LINING THE ROAD THE CAR WOULD HAVE CONTINUED TO ROLL POSSIBLY

KILLING US BOTH SINCE NONE OF THE AIRBAGS DEPLOYED. THE CAR WAS TOTALED AND I DO NOT HAVE ACCESS TO THE VIN#. (02/20/2010)

• AIR BAGS DID NOT DEPLOY IN A 2009 CHEVROLET COBALT CRASH THAT CAUSED $7,200 IN DAMAGE AND ON STAR DID NOT CALL OR REPORT THE CRASH. WHEN I ASKED WHY, I WAS TOLD "BECAUSE THE "BRAINS" OF ONSTAR WAS "KNOCKED OUT" IN THE CRASH, THAT SHUT DOWN THE AIR BAG SYSTEM AND OTHER SAFETY MEASURES." FORTUNATELY, THIS CRASH DID NOT CAUSE ANY BODILY HARM TO THE PERSON INVOLVED, BUT THE WHOLE FRONT END OF THE CAR WAS PUSHED IN, RADIATOR WAS PUSHED BACK, WITH LOTS OF OTHER DAMAGE. THE PERSON IN THE CAR WAS FINE, BUT IF THE ENGINE WOULD HAVE BEEN PUSHED IN FURTHER IN, IT COULD HAVE BEEN IN THE LAP OR, EVEN WORSE, THE CHEST OF THE PERSON DRIVING. I DO NOT HAVE ON STAR FOR IT TO BE "DISABLED" IN A CRASH BECAUSE OF WHERE IT IS PLACED IN THE VEHICLE. THIS SERIOUSLY NEEDS TO BE EXAMINED AND FIXED BEFORE SOMEONE DOES REALLY GET HURT, IF THIS HAD NOT HAPPENED ALREADY (09/08/2009)

26.    New GM received customer complaints of driver and passenger airbag failures in front end collisions.  Neither Old GM nor New GM ever issued a recall related to the failure of the driver and passenger airbags to deploy in a crash with frontal impact.

27.    Throughout the years in which it received these complaints, Old and New GM marketed GM brand vehicles as safe. For example, in a section called "Safety," Old GM's Chevrolet website stated:

**OUR COMMITMENT**

"Your family's safety is important to us. Whether it's a short errand around town or a cross-country road trip, Chevrolet is committed to keeping you and your family safe – from the start of your journey to your destination. That's why every Chevrolet is designed with a comprehensive list of safety and security features to help give you peace of mind."

28.    Similarly, Old GM promoted its Saturn vehicle line with television advertising tag lines like, "Putting people first," and, "Saturn. People First." Saturn's print ad campaign featured advertisements with statements such as the following: "Need is where you begin. In cars, it's about things like reliability, durability and, of course, safety. That's where we started when developing our new line of cars." In sum, in order to increase sales, Old GM touted the safety of its vehicles,

and New GM did nothing to correct the false representations of safety to the millions of vehicle owners whose cars were affected by defects in its airbag system and passenger restraint systems. Further, throughout the existence of both Old and New GM, GM dealerships continued to sell "certified pre-owned cars" that still had defective airbag and passenger restraint systems. New GM, which profited indirectly from these sales, certified the safety of these vehicles to the public, explaining that the certification process involved testing of over a hundred components, including the airbag and passenger restraint systems. This safety certification was made despite many of the affected vehicles still having the defective airbag and passenger restraint systems. As a result, many owners and users of the affected vehicles purchased and drove the vehicles in reliance upon these safety representations.

**AIRBAG/PASSENGER RESTRAINT SYSTEM DEFECTS**

29.    Plaintiff's 2009 Chevrolet Cobalt was equipped with driver and front passenger frontal airbags.  However, the front passenger airbags did not deploy during the subject collision even though there was a frontal impact.  Plaintiffs were killed as a result of the collision.

30.    Plaintiffs injuries were also caused by the failure of the passenger airbag to deploy in this collision.

31.    The defects in the design, manufacture and/or assembly of the 2009 Chevrolet Cobalt's safety components and the negligence of GM as described herein, resulted in the passenger frontal airbag not being deployed.

32.    Prior to February 1, 2016, Old GM designed, built, assembled, manufactured, tested, advertised, marketed, and distributed the "Cobalt", which contained design defects when it left the possession of Old GM.

33.    At all times material hereto, GM had a duty to use reasonable care to design, manufacture, market, modify and/or sell the Subject Vehicle and its Airbag System/Passenger Restraint System such that they would be reasonably safe for their intended purposes and pass without objection throughout the trade or industry.

34.    Notwithstanding this duty, GM carelessly, recklessly and negligently designed, manufactured, and sold the Subject Vehicle and its Airbag System/Passenger Restraint System such that there was an inherent defect in the Subject Vehicle, namely the Airbag System/Passenger Restraint System was subject to failure and did fail to operate as intended and designed at the time and place of the collision described herein.

35.    GM carelessly, recklessly and negligently failed to adequately test and inspect the Airbag System/Passenger Restraint System to determine whether prospective and foreseeable owners, users, drivers and occupants of the Subject Vehicle would be exposed to an unreasonable risk of physical harm during foreseeable automobile collisions of sufficient force to activate the Airbag System/Passenger Restraint System.

36.    All damages described herein were caused by the design, manufacture, marketing and distribution of a defective motor vehicle, both generally and in the following respects:  (a) the vehicle was not crashworthy; the vehicle was defective, unsafe and inadequate for the use for which it was made and intended to be used, including foreseeable collisions; the vehicle was not designed and equipped with alternative, technologically feasible and safer components which would have been capable of minimizing the risk of significant injury associated with frontal collisions and, therefore, the risks of harm outweighed the benefits of the selected defectively designed airbag system; the vehicle was defective, unsafe and inadequate for the use in which it was made and intended because it was equipped with an unsafe and defectively designed airbag

system/passenger restraint system because in foreseeable collisions the airbag would not deploy in a necessary and timely manner; the vehicle was defective and unsafe and inadequate because it did not include necessary and adequate warnings that the airbag would fail to deploy under foreseeable circumstances; the vehicle was defective, unsafe and inadequate because the airbag system/passenger restraint system did not perform in a manner that an ordinary consumer would expect under the facts that will be established at trial; and the airbag system/passenger restraint system designed and selected for this model vehicle was inadequately and unsafely designed so that the airbags did not deploy in frontal collision event that warranted airbag deployment to protect the occupants.

37.    Because of its defective design, manufacture and production, especially the airbag system/ passenger restraint system in the 2009 Chevrolet Cobalt, this vehicle was inherently dangerous in the event of foreseeable frontal collisions.

38.    GM breached its duties owed to Plaintiff in that it failed to recall and retrofit Plaintiff's 2009 Chevrolet Cobalt.

39.    Plaintiff was not aware of and could not have reasonably discovered the defective condition and dangerous nature of the Subject Vehicle and its Airbag System/Passenger Restraint System.

## CLAIMS AGAINST GENERAL MOTORS, LLC BROUGHT BY NAMED PLAINTIFF UNDER MINNESOTA LAW

### COUNT 1 – Negligence

40.    The Named Plaintiff re-alleges as if fully set forth, each and every allegation set forth herein.

41.    Under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement wherein New GM acquired certain Old GM assets, New GM assumed product liability

for crashes involving Old GM vehicles causing personal injury, loss of life or property damages. New GM also acquired knowledge of Old GM's activities and the Airbag System/Passenger Restraint System defect, and other serious defects, via the mind of the employees, officers, managers, as well as via books and records obtained and/or acquired as a result of the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement and subsequent Sale Order. Thus, the duties of Old GM are part of the foundation for the product liability assumed by New GM. Further, as identified therein, certain Named Plaintiff has claims for crashes involving Old GM vehicles that caused personal injury, loss of life or property damage and New GM is therefore liable to the Named Plaintiff.

42.    Old GM and New GM owed Named Plaintiff a duty to design, manufacturer, fabricate, assemble, inspect, market, distribute, sell, and/or supply products in such a way as to avoid harm to persons using them such as the Named Plaintiff.

43.    Old GM and New GM owed the Named Plaintiff a duty to detect known safety defects in GM vehicles.

44.    Old GM and New GM owed the Named Plaintiff a duty, once it discovered the Airbag System/Passenger Restraint System defect, to provide thorough notice of the defect,

including a warning that the defective vehicles should not be driven until an appropriate repair procedure is developed and performed.

45.    Old GM and New GM owed the Named Plaintiff a duty, once it discovered the Airbag System/Passenger Restraint System defect, to ensure that an appropriate repair procedure was developed and made available to drivers.

46.    Old GM and New GM knew that their customers, such as the Named Plaintiff, expect that the company will employ all reasonable efforts to detect safety defects, warn drivers of their existence, and develop and make available an appropriate repair procedure.

47.    Old GM and New GM efforts to discover, provide notice of, and provide repair procedures for safety related defects exist for the benefit of the Named Plaintiff and other drivers of GM vehicles.  Old GM and New GM was aware that by providing maintenance and repair information and assistance, including through its authorized dealerships, Old GM and New GM had a responsibility to the Named Plaintiff and other drivers to take the reasonable measures listed above.

48.    By reason of New GM's assumption of product liability under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement for crashes involving Old GM vehicles causing personal injury, loss of life or property damages, the failures of Old GM described above that contributed to or were causally connected to the injuries sustained by Named Plaintiff were among the product liability of Old GM assumed by New GM.

49.    Independent of any failures by Old GM as described herein, New GM breached its duties to the Named Plaintiff by failing to provide appropriate notice of and repair procedures for

the Named Plaintiff's Defective Vehicle.  In doing so, New GM departed from the reasonable standard of care required of it.

50.    It was foreseeable that if the New GM did not provide appropriate notice and repair procedures for the Defective Vehicles, the Named Plaintiff and other drivers would be endangered.

51.    The Named Plaintiff's injuries were reasonably foreseeable to Old GM and New GM.

52.    The Named Plaintiff could not through the exercise of reasonable diligence have prevented the injuries caused by Old GM and New GM's negligence.

53.    Old GM's and New GM's acts and omissions, when viewed objectively from the actor's standpoint, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.  Old GM and New GM nevertheless proceeded with conscious indifference to the rights, safety and welfare of others.

54.    As will be shown at trial, all the foregoing knowledge of Old GM in all the preceding paragraphs was inherited by or is imputable to New GM.

**COUNT II - Strict Liability (MN Civil Procedure, Ch. 544 §544.41)**

55.    The Named Plaintiff re-alleges as if fully set forth, each and every allegation set forth herein.

56.    Old GM and New GM, at all times relevant to this action, were engaged in the design, testing, manufacture, distribution, and sale of automobiles, including the Defective Vehicles.

57.    The Defective Vehicles were expected to and did reach users and consumers without substantial change in the condition in which it was sold.

58.    The Defective Vehicles were in a defective condition creating risk of harm to a user or a consumer, including Named Plaintiff.

59.    The defects set forth herein caused the Named Plaintiff's injuries.

60.    Under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement wherein New GM acquired certain Old GM assets, New GM assumed product liability for crashes involving Old GM vehicles causing personal injury, loss of life or property damage. As identified therein, the Named Plaintiff has claims for crashes involving Old GM vehicles that caused personal injury, loss of life or property damages and New GM is therefore liable to the Plaintiff.

61.    These injuries and losses were caused by New GM's designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the Defective Vehicles in a defective condition for which it is strictly liable to the Named Plaintiff pursuant to Minnesota Civil Procedure, Ch. 544 §544.41.  Alternatively, the injuries and losses were caused by Old GM's designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the Defective Vehicles in a defective condition for which New GM is strictly liable to the Named Plaintiff pursuant to Restatement (Second) of Torts § 402A because these product liabilities were assumed by New GM.

62.    These injuries were caused by New GM's designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the Defective Vehicles without proper and adequate warnings, instructions, and/or guidelines for safe use for which it is strictly liable to the Plaintiff.  Alternatively, these injuries were caused by Old GM's designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the Defective Vehicles without proper and adequate warnings, instructions, and/or guidelines for safe use for which New GM is strictly liable to the Plaintiff because these product liabilities were assumed by New GM.

63.     By reason of New GM's assumption of product liability under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement for crashes involving Old GM vehicles causing personal injury, loss of life or property damage, the failures of Old GM described above that contributed to or were causally connected to the injuries sustained by Named Plaintiff were among the product liabilities of Old GM assumed by New GM.  Independent of any failures by Old GM as described herein, New GM breached its duties owed to the Named Plaintiff as described herein.

64.     Plaintiff would show in the alternative that there was a manufacturing defect in Plaintiff's vehicle concerning the airbag system/passenger restraint system.

65.     As will be shown at trial, all the foregoing knowledge of Old GM in all the preceding paragraphs was inherited by or is imputable to New GM.

**COUNT III- Failure To Warn/Marketing Defect**

66.     Under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement, New GM expressly assumed liability for post-sale accidents involving Old GM vehicles causing personal injury, loss of life, or property damages. New GM also acquired knowledge of Old GM's activities and the defective Airbag System/Passenger Restraint System /Control Modules via the mind of the employees, officers, managers, books and records obtained and/or acquired as a result of the  June 26, 2009 Amended and Restated Master Sale and Purchase Agreement and subsequent  Sale Order. Thus, the acts or omissions of Old GM are part of the foundation for the liability assumed by New GM. Further, Plaintiff has claims for a post-sale accident involving a New GM vehicle that caused personal injury or property damage and New GM is therefore expressly liable to Plaintiff for Old GM's negligence. New GM is also liable to Plaintiff for its independent, post- Sale negligence.

67. Old GM was negligent in designing, manufacturing, and providing warnings for the Plaintiff's vehicle, as set forth in the paragraphs above (Airbag System/Passenger Restraint System Defects). Old GM acted unreasonably in manufacturing and selling vehicles with design, manufacturing, and informational defects and concealing such defects from Plaintiff, the public, and NHTSA.

68. In addition, Old GM's failure to notify NHTSA and Old GM vehicle owners of safety-related defects as required by 49 U.S.C. §30101, et seq. and 49 C.F.R. §§573, 577 constituted negligence per se. These statutes and regulations were enacted for the protection and safety of the public.

69. Old GM had a duty to ensure that its vehicles were reasonably safe to operate and did not contain defective components, and to produce vehicles with appropriate warning instructions. When Old GM learned that the Plaintiffs' vehicle was defective, it had a continuing duty to warn Plaintiff of the existence of the defect, including after the original sale of the vehicle.

70. New GM was also negligent in providing warnings about Plaintiffs' vehicles and unreasonably concealing the design, manufacturing, and informational defects that New GM knew existed in Old GM vehicles. New GM had a continuing duty to monitor Old GM vehicles for safety-related defects and warn Plaintiff, the public, and NHTSA about safety- related defects in Old GM vehicles. This duty is based on the direct and continuing relationship between New GM and the owners of Old GM vehicles. Among other things, New GM had a statutory duty to warn owners of Old GM vehicles, including Plaintiff, of safety defects and did, in fact, warn owners of Old GM vehicles, including Plaintiff, of the safety defects (though the warning arrived years later than it should have and unreasonably minimized the risk of harm.

71.    In addition, New GM's failure to notify NHTSA and Subject Vehicle owners of safety-related defects as required by 49 U.S.C. §30101, et seq. and 49 C.F.R. §§573, 577 constituted negligence per se. These statutes and regulations were enacted for the protection and safety of the public.

72.    Thus, independent of any failures by Old GM and New GM as described herein, New GM breached its duties to Plaintiff by failing to provide appropriate notice of and repair procedures for the Airbag System/Passenger Restraint System defects in Plaintiff's vehicle. In doing so, New GM departed from the reasonable standard of care required of it.

73.    Old GM's and New GM's negligence proximately caused the injuries and damages sustained by Plaintiff, as set forth herein. New GM's negligence in manufacturing and selling a vehicle containing design and manufacturing defects and Old GM's and New GM's negligence in failing to adequately warn Plaintiffs about known defects in their vehicles and in violating the statutes and regulations that required Old GM and New GM to recall Plaintiffs' vehicles for safety-related defects proximately caused Plaintiffs' inability to avoid the crash made the basis of this lawsuit that left them severely injured or killed.

74.    New GM is liable for compensatory damages based on Old GM's conduct and based on New GM's own independent conduct.  New GM is further liable for fair and reasonable damages for pain and suffering, medical expenses, and/or damages as may be determined by the Court or the jury, as well as costs, expenses, and reasonable attorneys' fees.

**DAMAGES**

75.    The Named Plaintiff prays for damages against the Defendant in a sum of money in excess of the jurisdictional amount of Seventy-Five Thousand Dollars ($75,000.00) plus costs and any such other relief to be deemed just and equitable to which they are entitled.

**Damages – Wrongful Death**

76.    As a direct and proximate result of New GM's wrongful conduct, Plaintiff Dean Fritze has been (and continues to be) damaged in the form of the wrongful death of his parents, Dean Fritze and Minerva Fritze, and seeks to recover the following damages: (a) past and future mental anguish as a result of the death of his parents; (b) past and future loss of companionship and society as a result of the death of his parents; (c) past and future pecuniary loss as a result of the death of his parents; (d) loss of inheritance as a result of the death of his parents.  All of the damages sustained by Plaintiffs were reasonably foreseeable by New GM, and exceed the minimum jurisdictional limits of this Court.  All conditions precedent to Plaintiffs' claims for relief have been performed and/or occurred.

**Damages – Survival Claims**

77.    As a direct and proximate result of New GM's wrongful conduct, Decedents have been damaged in the form of: (a) physical pain and mental anguish sustained by Decedents as a result of the incident in question and prior to their death; (b) medical expenses for the reasonable and necessary services provided for Decedents as a result of the incident in question; and (c) reasonable and necessary funeral and burial expenses for the funeral and burial of Decedents.

78.    All of the damages sustained by Plaintiffs were reasonably foreseeable by New GM, and exceed the minimum jurisdictional limits of this Court.  All conditions precedent to Plaintiffs' claims for relief have been performed and/or occurred.

**PRE-JUDGMENT INTEREST AND POST-JUDGMENT INTEREST**

79.    Lastly, Plaintiffs are entitled to pre-judgment and post-judgment interest (to be determined).

**JURY DEMAND**

80.    The Named Plaintiff requests a trial by jury.

**PRAYER**

81.    For the foregoing reasons, the Named Plaintiff prays that the Defendant be cited to appear and answer herein, and that upon final hearing of the cause, judgment be entered for the Plaintiff against Defendant for actual damages, as alleged, together with pre-judgment interested (from the date of injury through the date of judgment) at the maximum rate allowed by law; post-judgment interest at the legal rate, costs of court; and such other and further relief to which Named Plaintiff may be entitled at law or in equity.

Dated: August 6, 2018

RESPECTFULLY SUBMITTED,

/s/ *Mitchell A. Toups*
Mitchell A. Toups (TX Bar # 20151600)
WELLER, GREEN, TOUPS & TERRELL, LLP
2615 Calder Ave., Suite 400
Beaumont, TX 77702
Telephone: (409) 838-0101
Facsimile: (409) 832-8577
Email:  matoups@wgttlaw.com

James R. Dugan, II
THE DUGAN LAW FIRM, APLC
365 Canal Street, Suite 1000
New Orleans, Louisiana 70130
Telephone: (504) 648-0180
Facsimile: (504) 648-0181

Gregory K. Evans (TX Bar  No. 24002065)
Law Offices of Gregory K. Evans, PLLC
3900 Essex, Suite 690
Houston, TX  77027
(713) 840-1299
Facsimile:  (281) 254-7886
Email:  greg@gevanslaw.com

***Attorneys for Plaintiffs***